# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DENTSPLY SIRONA, INC, et al.,

       Plaintiffs,

v.                                          Civ. No. 17-1041 WJ/SCY

EDGE ENDO, LLC, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFFS' MOTION TO COMPEL
## RESPONSE TO INTERROGATORY NO. 6

**THIS MATTER** is before the Court on the parties' Joint Notice of Renewal, filed February 21, 2019. Doc. 186. This Notice renews, in part, Plaintiffs' Motion to Compel Responses to Plaintiffs' Interrogatory No. 6 and Document Request Nos. 53-57, Doc. 153. Plaintiffs' Motion to Compel was originally denied without prejudice by Chief Judge Johnson in his Memorandum Opinion and Order Granting Defendants' Motion to Stay Proceedings Pending *Inter Partes* Review. Doc. 177 at 10. Chief Judge Johnson granted Plaintiffs leave to renew the motion after the stay is lifted. *Id.* The stay was lifted on January 23, 2019. Doc. 179.

The Joint Notice of Renewal explains that the parties reached partial agreement on the Motion to Compel. Doc. 186 at 1. Plaintiffs do not renew the portions of the motion directed to Document Requests 53-57. *Id.* at 1-2. Therefore, the sole issue remaining for the Court to decide is the portion of the motion directed to Plaintiffs' Interrogatory No. 6. *Id.* at 2. The parties submit that this issue is ripe for resolution by the Court, and do not request oral argument. *Id.* Accordingly, the Court addresses the motion to compel with respect to Interrogatory No. 6 in this Memorandum Opinion and Order and GRANTS Plaintiffs' motion with regard to Interrogatory No. 6.

## BACKGROUND

Plaintiffs and Defendants design and sell endodontic drill files. Plaintiffs filed this patent infringement case on October 10, 2017, alleging that Defendants infringed upon four published patents. The parties refer to these patents as the "Patents-in-Suit." *See* Doc. 68, Second Amended Complaint ("Compl."), ¶ 1.[1] In this opinion, the Court refers to them as the "asserted patents." The present dispute relates to discovery inquiring about "Marked Patents," the definition of which is subject to some controversy.

This term refers to the patent marking statute, 35 U.S.C. § 287. This law allows patentees to "give notice to the public that [an article] is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent . . . or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." *Id.* § 287(a). The failure to so mark an article will preclude the patentee from collecting damages prior to notifying an alleged infringer of the infringement. *Id.* Filing a lawsuit alleging infringement, however, is itself a method of notification. *Id.*

One of Defendants' defenses in this case is that Plaintiffs failed to mark its own products with the correct patents. Doc. 162 at 2 ("Dentsply's failure to mark its ProTaper Next files with the patents-in-suit demonstrates that its claim of willful infringement . . . lacks merit . . . ."). Plaintiffs have agreed that they are therefore not entitled to damages prior to their notification to Defendants of the Patents-in-Suit, *i.e.*, this lawsuit. *See* Doc. 162-7 at 3 (plaintiffs' counsel statement during the June 7, 2018 discovery hearing that "we're not seeking presuit damages for

---

[1] The "Patents-in-Suit" consist of U.S. Patent No. 8,932,056; No. 9,351,803; No. 8,882,504; and No. 9,801,696. Compl. ¶ 1.

patent infringement"). Plaintiffs insist, however, that they are entitled to damages for post-suit infringement as well as enhanced damages for willful infringement. Doc. 174 at 8.

On May 23, 2018, Plaintiffs served their Second Set Of Interrogatories (Nos. 4-7) To Defendants. Doc. 162-2. In it, Plaintiffs defined "Marked Patents" as follows:

> Marked Patent means any U.S. or non-U.S. patent with which Plaintiffs' ProTaper Next® file system was marked at any time on or after January 1, 2013, including, but not limited to, U.S. 5,658,145, 5,746,597, 6,942,484, 7,955,078, 7,648,599, and the Patents-in-Suit.

*Id.* at 4.[2]

> Interrogatory No. 6 requests, in full:
>
> State whether Defendants had knowledge of and/or evaluated any Marked Patents prior to the filing of this litigation. To the extent that Defendants did so, describe in detail the steps Defendants performed, or had performed, in evaluating each Marked Patent. For each Marked Patent evaluated, state the patent number, the date upon which that patent was analyzed, the conclusions reached regarding infringement, validity, and enforceability with respect to that patent, whether Defendants requested an opinion of counsel for that patent, and the date upon which that opinion of counsel was communicated to Defendants.

*Id.* at 3.

Defendants served objections and responses on June 22, 2018. Doc. 162-3. Defendants objected to the definition of "Marked Patents" and separately answered Interrogatory No. 6 as follows:

> Defendants object to the definition of "Marked Patent" as overbroad, unduly burdensome, and seeking information that is neither relevant to any party's claims or defenses nor proportional to the needs of the case to the extent it includes patents not asserted against Defendants.
>
> . . . .
>
> In addition to its general objections, Defendants object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. Subject to and without waiving its general or specific

---

[2] Throughout this opinion, the Court uses the document page numbers in the headers automatically generated by the CM-ECF system.

objections, or any applicable privilege or protection from disclosure, Defendants respond as follows:

Defendants had no knowledge of the Patents-in-Suit prior to the filing of this litigation.

Doc. 162-3 at 4-5.

Defendants contend that Plaintiffs seek "information regarding five patents that have not been asserted in this litigation and that Dentsply itself acknowledges do not cover Defendants' accused EdgeTaper Encore endodontic files." Doc. 162 at 5. Plaintiffs do not dispute that Interrogatory No. 6, in relevant part, requests information about patents that Plaintiffs have not asserted against Defendants in this lawsuit. Therefore, the Court does not use the somewhat ambiguous term "Marked Patents" as defined in Plaintiffs' Interrogatories, which includes both asserted and unasserted patents. Defendants fully answered the Interrogatory as it pertains to asserted patents. Doc. 162-3 at 5. Instead, because the present dispute concerns the Interrogatory only insofar as it calls for information on "unasserted patents," the Court will use that term in its discussion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The discovery standard in patent cases is "guided by regional circuit law." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1297 (Fed. Cir. 2016). In addition to Tenth Circuit cases, the Court also looks to Federal Circuit law to the extent it is relevant to patent issues.

"[T]he scope of discovery under the federal rules is broad," and "'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the

issues.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "[W]hen a party objects that discovery goes beyond that relevant to the claims or defenses, 'the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.'" *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188-89 (10th Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory committee's note on 2000 amendments). "This good-cause standard is intended to be flexible." *Id.* "When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be." *Id.*

The Federal Circuit has held that the district court abuses its discretion when it orders production without a showing from the proponent that the discovery sought is related to either "a charge of infringement" or that it has some other "evidence of relevance or need." *Drone Techs.*, 838 F.3d at 1300. "[D]iscovery may not be had unless it is relevant to the subject matter of the pending action." *Id.* at 1299. It "should not [be] granted based solely on . . . suspicion." *Id.* at 1300.

## ANALYSIS

The question before the Court is whether Plaintiff is entitled to information as to Defendants' knowledge or investigation of unasserted patents. Plaintiffs argue that information on unasserted patents is relevant to the "subjective willfulness inquiry, i.e., whether Defendants' risk of infringing the Patents-in-Suit was either known or so obvious that it should have been known to Defendants." Doc. 153-1 at 1-2. The law governing willful infringement thus determines what is relevant in this action.

Section 284 of the Patent Act provides:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

35 U.S.C. § 284.

In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, the Supreme Court overturned previous Federal Circuit case law holding that the analysis under § 284 included an objective inquiry. 136 S. Ct. 1923, 1932 (2016). *Halo* held that the sole focus of the inquiry is on "[t]he subjective willfulness of a patent infringer, intentional or knowing." *Id.* at 1933. "[S]uch damages are generally reserved for egregious cases of culpable behavior." *Id.* at 1932. Enhanced damages "are not to be meted out in a typical infringement case." *Id.* at 1932. "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Id.*

This "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id.* at 1933. Therefore, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). The Federal Circuit has indicated that, "under *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the entire willfulness determination is to be decided by the jury." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018). Accordingly, any and all "evidence relevant to [the accused infringer's] state of mind at the time of the accused infringement" must go to the jury, unless there is no

genuine issue of material fact. *Id.* And in *WCM Industries v. IPS Corp.*, a recent but unpublished case, the Federal Circuit emphasized that there is no "per se rule" under which district courts evaluate willfulness contentions; rather, the factfinder must look to the "'totality of the circumstances presented in the case.'" 721 F. App'x 959, 970 (Fed. Cir. 2018) (quoting *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986)).

*WCM Industries* upheld a district court decision denying a defense motion for judgment as a matter of law on the plaintiff's willful infringement claim and, further, found that sufficient evidence supported the jury's verdict of willfulness. *Id.* at 969-70. The evidence at trial included testimony that, when the accused infringer acquired the assets of the alleged copier, the accused infringer knew that the alleged copier "did not employ engineers or fulltime product developers to create the" accused product. *Id.* at 970-71. Nonetheless, the alleged infringer did not investigate how the company it acquired managed to develop the accused product without the use of engineers. *Id.* An employee of the accused infringer testified that "he had monitored WCM's products for decades and possessed catalogs and other literature indicating that WCM's products were marked with 'patent pending,'" and another testified that the accused infringer had a "culture of copying." *Id.* at 971.

Recently, a case from the District of Massachusetts analyzed a similar issue and concluded that *WCM Industries* "cast[s] significant doubt" on the line of cases holding that "neither general knowledge of a patent portfolio nor actual knowledge of a patent application or of related patents, without more, is sufficient even to plausibly allege knowledge of a particular asserted patent." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018). Although not cited in *SiOnyx*, the case Defendants rely on here—*Vasudevan Software, Inc. v. Tibco Software, Inc.*—falls within the category of cases the *SiOnyx* court called

into doubt. No. 11-06638, 2012 WL 1831543 (N.D. Cal. May 17, 2012) (cited in Doc. 162 at 12-13).

In *Vasudevan*, the alleged infringer was on notice of a parent patent and a pending patent application that would be a continuation of the parent. 2012 WL 1831543, at *1. Such notice, the court held, failed to state a claim for willful infringement. *Id.* at *3. In reaching this decision, the court concluded that awareness of a parent patent and of a patent application is not the equivalent of awareness of a patent. *Id.* ("Like principles apply to [plaintiff]'s suggestion that knowledge of that patent in suit may be inferred from [defendant]'s alleged awareness of the [parent] patent, or, more generally, [plaintiff]'s 'patent portfolio,' whatever it may include. The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of other patents, even if somewhat similar."). This decision, however, came before the Supreme Court issued its decision in *Halo*.

Cases such as *SiOnyx* and *WCM Industries*, which were decided with the benefit of *Halo*'s guidance, are more persuasive than *Vasudevan*. Thus, this Court agrees with the *SiOnyx* court's conclusion that, "there is no bright-line rule as to what level of knowledge is sufficient" and, "[l]ike any question of intent, it must be inferred from all the evidence and circumstantial evidence can suffice." *SiOnyx*, 330 F. Supp. 3d at 610. Under this reasoning, the universe of evidence that is relevant to the question of willful infringement is expansive. In *SiOnyx*, for example, the court relied on a wide variety of evidence in denying summary judgment on the issue of willfulness. The evidence included reports summarizing a competitor's work, including citations to "two pending patent applications that name [the plaintiffs' individual founders] as inventors and that are great-grandparent and great-great-grandparent applications of the asserted '467 patent"; an email among employees of the alleged infringers "forwarding a news report"

about the plaintiff's "failure to patent certain aspects of its technology"; and evidence that the alleged infringer had actually referenced, in its own family of patents, the "patents and patent applications in the same family as the '467 patent." *Id.*

Similarly, the Court agrees with Plaintiffs that the discovery sought could be relevant to Defendants' state of mind at the time Defendants allegedly copied Plaintiffs' product. Information bearing on Defendants' knowledge of unasserted patents that are similar or related to asserted patents could be relevant circumstantial evidence of Defendants' subjective intent to infringe the asserted patents. Plaintiffs argue that they "intend to show that Defendants took deliberate action to avoid learning of the Patents-in-Suit," and "[t]he date that Defendants learned of the Marked Patents, which might have triggered a reasonable individual to search for any additional, related patents, is relevant to this inquiry." Doc. 153-1 at 13. "And, to the extent non-privileged information exists, any evaluation of—or instruction not to evaluate—these patents is highly relevant." *Id.* In other words, either Defendants investigated the patents marked on Plaintiffs' product, or they did not. The results of that investigation—or a refusal to investigate—may be relevant to whether related patents were willfully infringed. Although the Court reaches no conclusions as to whether any such evidence would in fact demonstrate willful infringement, the Court agrees that Plaintiffs have made a plausible showing of relevance.[3]

Plaintiffs' Motion to Compel, as it relates to Interrogatory No. 6, is GRANTED. Defendants shall supplement their Response and answer Interrogatory No. 6 in full within 21 days of this Order. Because no controlling precedent clearly governs the legal issues discussed

---

[3] Because the discovery request seeks information relevant to the willful infringement test under *Halo*, the Court does not reach the parties' arguments as to whether the doctrine of "willful blindness" is applicable in willful infringement cases. *Cf.* Doc. 162 at 11; Doc. 174 at 9.

in this Order and because this Order addresses only a portion of Plaintiffs' motion to compel, the Court declines to shift costs related to this motion—each party must bear its own costs.

      **IT IS SO ORDERED**.

 

_____
UNITED STATES MAGISTRATE JUDGE