IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENTSPLY SIRONA INC., TULSA DENTAL
PRODUCTS LLC D/B/A DENTSPLY
SIRONA ENDODONTICS,

               Plaintiffs,

    vs.

EDGE ENDO, LLC, US ENDODONTICS,
LLC,

               Defendants.

**1:17CV1041-JFB-SCY**

**MEMORANDUM & ORDER**

This matter is before the Court on the following motions:[1]

1.  Motion in limine to exclude evidence and argument that defendants "blocked" manufacturer from producing documents, Doc. 360;

2.  Motion in limine to Exclude Evidence and Argument Concerning Chinese Culture and Business Practices, Doc. 361;

3.  Motion in limine to Exclude Improper Evidence and Argument Concerning Direct Infringement, Doc. 362;

4.  Motion in limine to Exclude Evidence and Argument Concerning the PTAB's Decisions to Exercise Discretion and Decline to Institute Inter Partes Review of the Patents-in-Suit, Doc. 363;

5.  Motion in limine to Preclude Argument that there is an Obligation to Obtain an Opinion of Counsel, Doc. 364;

---

[1] Docs. 360 through 368 are filed by defendants Edge Endo, LLC, US Endodontics, LLC. Docs. 369 (including 11 motions) and 392 are filed by plaintiffs Dentsply Sirona Inc. and Tulsa Dental Products LLC.

6. Motion to Exclude, in Part, Testimony of Deborah A. Peacock, Esq., Doc. 365;

7. Motion in limine to Exclude Evidence and Argument that Edge is a Serial Copier of Dentsply's Products, Doc. 366;

8. Motion in limine to Exclude Argument and Evidence Related to Defendants Index of Privileged Documents, Doc. 367;

9. Motion to Bifurcate Trial with Two Consecutive Phases: (1) Infringement and Invalidity, and (2) Damages and Willfulness, Doc. 368;

10. Motion for leave to file a reply to defendants' opposition and response to plaintiff's motion in limine, Doc. 392; and

11. Motions in limine 1-11, Doc. 369.

**BACKGROUND**

Plaintiffs filed their second amended complaint for patent infringement, alleging infringement by defendants of United States Patent Nos. 8,932,056 ("the '056 patent"), 9,351,803 ("the '803 patent"), 8,882,504 ("the '504 patent"), and 9,801,696 ("the '696 patent") (collectively the "Asserted Patents" or the "Patents-in-Suit"). Doc. 68. These patents allegedly cover revolutionary advances in the technology used in endodontic files. This action arises under the patent laws of the United States, Title 35 of the United States Code.

On January 13, 2015, the United States Patent and Trademark Office issued United States Patent No. 8,932,056 entitled "Swaggering Endodontic Instruments" to inventor Michael Scianamblo. On May 31, 2016, the United States Patent and Trademark Office issued United States Patent No. 9,351,803 entitled "Endodontic Instruments with Offset Centers of Mass" to inventor Michael Scianamblo. On November 11, 2014, the

United States Patent and Trademark Office issued United States Patent No. 8,882,504 entitled "Swaggering Endodontic Instruments" to inventor Michael Scianamblo.   On October 31, 2017, the United States Patent and Trademark Office issued United States Patent No. 9,801,696 entitled "Instruments for Drilling Dental Root Canals" to inventors Gilbert Rota and Paul-Henri Vallotton.   Dentsply Sirona has been selling its ProTaper Next endodontic files since January 2013.   Thereafter, contend plaintiffs, defendants promoted a product known as Edge Taper Encore which is allegedly identical to plaintiffs' ProTaper Next product.

The endodontic files at issue are very small instruments having diameters of less than 1 millimeter.

The Court (1) granted plaintiffs' motion for summary judgment in Doc. 314 that claims 6, 10, and 11 of the '504 Patent, claims 10, 11, and 17 of the '056 Patent, and claims 13, 14, and 20 of the '803 Patent are not invalid; (2) granted plaintiffs' motion for summary judgment that claims 1-2, 5, and 8-10 of the '696 Patent are not invalid over Scianamblo '669; and (3) grants plaintiffs' motion for summary judgment that the asserted claims of the '504 Patent are not invalid over McSpadden '186, Rouiller, or Badoz '279. The Court also granted part of plaintiffs' motion for summary judgment in Doc. 313.   Doc. 354, Memorandum and Opinion Order.   The remaining claims in this case concern the damages that flow from the infringement.

**LEGAL STANDARD**

The Court has broad discretion to grant a motion in limine to exclude inadmissible evidence before it is offered at trial. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Evidence and argument that is irrelevant is not admissible and will be excluded.   Fed. R.

Evid. 104(b), 402.  Relevant evidence still should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or wasting trial time. Fed. R. Evid. 403; *Schinagel v. City of Albuquerque*, 2009 WL 10696214, at *3-4 (D.N.M. Mar. 25, 2009).

**DISCUSSION**

1. **Motion in limine to exclude evidence and argument that defendants "blocked" manufacturer from producing documents, Doc. 360**

Defendants ("Edge") move for an order, pursuant to Federal Rules of Evidence 104(b), 402, and 403, to exclude evidence and argument that Edge "affirmatively blocked" its supplier, Shenzhen Superline Technology Co., Ltd. ("Superline"), from producing documents in this litigation. Defendants contend that Dentsply will likely state at trial that "the jury could reasonably infer from these facts that Defendants do not wish for the manufacturing specifications to be shown at trial because they would show that the product sold by Defendants is designed to have a centered portion near the tip, and that any variations from the design documents are due to shoddy manufacturing by Superline." Doc. 328, p. 18.

Defendants argue that Dentsply's argument that Edge "blocked" Superline from producing the documents is false and such evidence would mislead the jury.  Further, Edge argues that such argument has nothing to do with whether there is infringement by it of any of the patents.  *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C-08-04990-JW, 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012) ("Evidence of the parties' discovery disputes are not relevant to the questions of patent validity or infringement, and thus should not be presented to the jury.").

Dentsply states it does not intend to assert that Edge "blocked" its foreign supplier from producing documents. Dentsply does, however, wish to "be permitted to present to the jury the undisputed facts surrounding this issue— namely, that Defendants could have asked Superline for the manufacturing specifications for the EdgeTaper Encore, but that they chose not to do so. The absence of detailed manufacturing drawings is important to the issue of infringement in this case, because Defendants' noninfringement defense is based principally on its arguments regarding the precise shape of its file— something that would be shown by the missing manufacturing drawings." Doc. 384 at 5. Dentsply argues that it sought the information on product specifications and drawings, defendants did not produce the same, plaintiffs issued a Letter Rogatory for Superline seeking design and manufacturing documents, defendants opposed the motion, the Court granted the motion, no documents were produced by Superline, the plaintiff requested defendants to ask Superline to produce them, and defendants refused the request. Plaintiffs do not want the jury to incorrectly assume that plaintiffs do not rely on the design documents because they are detrimental to their case but because the manufacturer and defendants refused to produce them.

The Court has carefully reviewed this motion and the supporting briefs and evidence and the brief in opposition and index of evidence, Doc. 384. The Court first agrees that generally discovery disputes are not relevant in patent cases. However, here, the lack of discovery documents is relevant to Dentsply's defenses in this case. The Court will permit evidence that these documents may have been relevant to the case, but due to circumstances beyond plaintiffs' control, plaintiffs were unable to obtain them. Accordingly, the defendants' motion is denied in part and granted in part.

**2. Motion in limine to Exclude Evidence and Argument Concerning Chinese Culture and Business Practices, Doc. 361**

Defendant next moves to exclude this evidence contending that the nickel titanium component of Edge's Encore file is manufactured and machined by a third-party company, Shenzhen Superline Technology Co., Ltd. ("Superline"), located in Shenzhen, China.  Defendants contend (i) that Dentsply will directly or indirectly imply that "'Chinese companies have a reputation for stealing [or not respecting] American intellectual property,' and (ii) Dentsply's claims of infringement of the patents-in-suit are supported by the fact that Edge's Encore files were manufactured in China." Doc. 361-1 at p. 4 and Doc. 361-4, Ex. 2 at 206:1-206:6; Doc. 361-5, Ex. 3 at 118:1-18; Doc., 361-6, Ex. 4 at 66:12-67:7; Doc. 361-7, Ex. 5 at 34:8-34:18; Doc 361-5, Ex. 3 at 55:1-56:1; Doc. 361-4, Ex. 2 at 16:11-17:12; and Doc. 361-8, Ex. 6 at 17 n.3 (Expert Report of D. Peacock).  This evidence is dangerous and may induce prejudice argues defendants. Evidence or arguments based upon racial or ethnic stereotypes necessarily rely upon bias, animus, and guilt by association and should be excluded under Rule 403. *See, e.g., Jinro Am., Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1007 (9th Cir. 2001), opinion amended on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001) (finding in a criminal case that testimony should have been excluded under Rule 403; noting that "[a]llowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype").

Dentsply argues that plaintiffs do not intend to offer any evidence that "Chinese companies have a reputation for stealing American intellectual property." Doc. 361-1 at

6

5.  Second, plaintiffs argue that they should be allowed to adduce evidence about from whom they purchased the Accused Products.  Defendants argue they do not know many answers about who and what they purchased, including the last names of the people from which they buy the product.  The jury has a right, contends the plaintiffs, to determine the due diligence of the supplier.  Defendants purchased millions of dollars of products from Superline but contend they do not know the last names of the people they worked with. Further, plaintiffs contend that there is no reason to withhold the fact that Superline is located in China.  Many of the documents will so note that the manufacturer is located in China.

The Court will deny the motion in limine.  Plaintiffs have agreed to not offer any evidence regarding an alleged propensity to steal.  The identity of the supplier is relevant, particularly since the evidence will convey that in any event.   Finally, the Court will allow plaintiffs to ask the question regarding the names of the people that defendants worked with in China.   However, the Court will not permit the plaintiffs to do anything that resembles stereotyping or generalizing about the Chinese or their alleged patent practices.

### 3.  Motion in limine to Exclude Improper Evidence and Argument Concerning Direct Infringement, Doc. 362

Defendants ask the Court to exclude evidence and argument to indicate direct infringement, that is not based on a comparison of the patent claims to the accused Edge Taper Encore endodontic files, the Accused Products.  Plaintiffs will use their expert's, Dr. David Sonntag, testimony to establish direct infringement.  Dr. Sonntag, contends defendants, will use Dentsply's Pro Taper Next and compare it with Edge's Accused Products.   This, argues, defendants, does not prove anything regarding direct

infringement.  Dr. Sonntag also states that "[i]t is my opinion that Defendants' EdgeTaper Encore is intended to be a copy of Plaintiffs' ProTaper Next." Doc. 362-3, Ex. 1 (Sonntag Report) ¶ 45-55.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (Direct infringement "is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed."); *Fleet Engineers, Inc. v. Mudguard Techs.*, LLC, 761 F. App'x 989, 992-93 (Fed. Cir. 2019) ("On remand, the district court should assess infringement by comparing the accused products to the invention as claimed, not to Mr. Surti's product.").  There is a narrow exception to this legal analysis, but defendants contend it does not apply here.  That analysis focuses on the accused product is indicative only when such a comparison is tied to the limitations of the asserted patent claims, as opposed to "unclaimed and therefore irrelevant features." *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995).  As argued by the defendants, "Dr. Sonntag relies on (1) a comparison of the overall "sizes" and "lengths" of ProTaper Next and the Accused Products; (2) side-by-side and superimposed photographs of the products; and (3) party and third-party documents referring to the products as a whole." Doc. 362-1 at 10.

Plaintiffs contend otherwise.  Plaintiffs contend they understand the standard for proving infringement.  *See, e.g., LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) ("Direct infringement of an apparatus claim 'requires that each and every limitation set forth in a claim appear in an accused product.'").  Evidence of copying, argue plaintiffs, is relevant to non-obviousness (validity), willful infringement, and damages. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1582 (Fed. Cir. 1989) ("[C]opying is evidence of willful infringement."); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d

1013, 1030 (N.D. Cal. 2017) ("Evidence of copying weighs in favor of enhanced damages."); *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1137 (Fed. Cir. 2019) ("It is well established that copying by a competitor is a relevant consideration in the objective indicia analysis.").

The Court agrees with the plaintiff.  Dr. Sonntag is plaintiffs' expert regarding validity of the patents-in-suit, and it appears that much of his analysis will be relied on by other experts as to willful infringement and damages.  Plaintiffs indicate they will not rely on evidence of copying to prove direct infringement.  Accordingly, the Court will permit this evidence at trial.  If defendants believe the plaintiffs cross the line in this regard, they may bring it to the Court's attention at that time.

### 4. Motion in limine to Exclude Evidence and Argument Concerning the PTAB's Decisions to Exercise Discretion and Decline to Institute Inter Partes Review of the Patents-in-Suit, Doc. 363

Defendants ask this Court to exclude evidence regarding decisions of the United States Patent and Trademark Office's Patent Trial and Appeal Board (the "PTAB" or the "Board") to exercise discretion and decline to institute inter partes (IP) review of the patents-in-suit.  In 2018 Edge filed petitions requesting IPR of the asserted patents, the three Scianamblo patents and the '696 patent.  The PTAB declined to institute IPRs on January 14, 2019, because "the same or substantially the same prior art or arguments" were considered previously when the patents were applied for in the first instance. *See* Doc. 363- 7, Ex. 5 at 2, 11-12, 24; Doc. 363-8, Ex. 6 at 2, 10-11, 22-23; Doc. 363-9, Ex. 7 at 2, 9-11, 17; Doc. 363-10, Ex. 8 at 2, 9-10, 15, 19, 24.  Defendants contend that Dentsply is going to introduce this decision to show that the PTAB rejected Edge's invalidity arguments and that Edge's infringement is willful.  Defendants are concerned

that this will lead the jury to reject Edge's defenses based on an incorrect assumption. Defendants ask the Court to exclude all evidence relating to the PTAB's non-institution decision.

Plaintiffs disagree and argue that defendants will rely on an opinion of counsel that thoroughly analyzes the proceedings before the PTAB involving the four patents in suit as a defense to willful infringement. Doc. 291-18, Ex. 16 (Legal Opinion of Michael Marcin, Esq. ("Marcin Opinion")). The four PTAB decisions are appended to the opinion of counsel and they will call Mr. Marcin as a witness at trial. Further, argues plaintiffs, the Marcin opinion mischaracterizes the PTAB decisions that are favorable to the defendants. As stated by plaintiffs, "Mr. Marcin opines that 'the PTAB did not rule on any substantive matter related to the question of invalidity' with respect to any of the four Patents-in-Suit. *See* Doc. 291-18, Ex. 16 (Marcin Opinion). In his deposition, however, Mr. Marcin admitted that the PTAB did make substantive findings, including by rejecting certain of Defendants' arguments regarding the asserted prior art references."[2] Doc. 384 at 14. Third, plaintiffs argue that the PTAB decisions bear on the issue of validity. The PTAB repeatedly states that these references cited by defendants in their IPR petitions were considered by the Patent Office in its prior decisions. Doc. 384-15, 16, 17, 18,   Ex. 14

---

[2] Q. So here we have the PTAB not only rejecting an argument made by Edge regarding why McSpadden [a reference on which Defendants intend to rely at trial] rendered the patent claims invalid, it called Edge's arguments not credible, correct?
A. It called some of Edge's arguments not credible.
Doc. 384-14, Ex. 13 (Nov. 19, 2019 Dep. Tr. of Michael Marcin) at 96:18-23 (emphasis added).

Q. So here the PTAB is calling Edge's argument unreasonable, correct?
A. The word "unreasonable" is written here, yes.…
Q. So for one patent they called Edge's arguments not credible, and for another patent they called Edge's arguments unreasonable, correct?
A. They called some arguments. In one decision the words "not credible" were used; in this decision the word "unreasonable" was used.
*Id.* at 110:3-24.

('504 Patent Institution Denied) at 18-24; Ex. 15 ('056 Patent Institution Denied) at 16-17, 19-23; Ex. 16 ('803 Patent Institution Denied) at 12-15, 17; Ex. 17 ('696 Patent Institution Denied) at 11-13, 18-19, 22, 24.

The Court agrees with the plaintiffs. Defendants opened the door. They cannot expect to enter such evidence on their behalf and then argue that the plaintiffs cannot do so. *See Cal. Inst. of Tech. v. Broadcom Ltd.*, Dkt. 1976, No. 16-03714 (C.D. Cal. Jan. 17, 2020) (Doc. 384-27, Ex. 26) at 4 (admitting evidence regarding IPR proceedings to the extent that the defendants "open the door" by referencing at trial prior art that they had relied upon in the IPR. Further, "evidence of PTO proceedings may be relevant to [the issue of] of validity and that courts frequently allow evidence of this kind." *Finjan, Inc. v. Sophos, Inc.*, No. 14-01197, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016) (emphasis added). The Court also agrees that "[a]ny potential confusion can be addressed by appropriate jury instructions on the standard of proof applicable to patent invalidity defenses and counterclaims"). *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014); *Dexcowin Glob., Inc. v. Aribex, Inc.*, 2017 WL 3478492, at *3 (C.D. Cal. June 29, 2017); *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 13-2240, 2015 WL 3824208, at *9 (M.D. Fla. June 19, 2015). Accordingly, the Court will deny the motion in limine, subject to reassertion at trial if defendants believe the plaintiffs are veering outside of this ruling.

5. **Motion in limine to Preclude Argument that there is an Obligation to Obtain an Opinion of Counsel, Doc. 364**

Defendants argue that the court should preclude the argument by plaintiffs that there is an obligation to obtain an opinion from counsel prior to launching the ETE (endodontic file system). Defendants argue that opinions of counsel are not required,

and their absence cannot be used to show willful infringement.  *See* 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent . . . ."); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("[The] decision not to seek an advice-of-counsel defense is legally irrelevant under 35 U.S.C. § 298.").

Plaintiffs, however, contend that reference to 35 U.S.C. § 298 is irrelevant, because defendants did obtain an opinion of counsel, and they are relying on it as a defense to willful infringement.  Said opinion of counsel is listed as a trial exhibit, and the author is listed as a trial witness.  Plaintiffs argue they are entitled to ask about the opinion and ask about why it was not obtained until 18 months after the filing of the lawsuit.  *See* Doc. 291-18, Marcin Opinion, dated April 19, 2019. *See also Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) ("It would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function…and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe.").

Once again, the defendants have opened the door to this argument.  They are using the opinion as evidence and as a defense against willfulness.  "The protection granted by 35 U.S.C. § 298 dissolves in the event defendants 'open the door' by attempting to refute a claim of willful infringement by implying that they relied on the advice of counsel." *Hologic, Inc. v. Minerva Surgical, Inc.*, 2018 WL 3348998, at *2 (D. Del. July 9, 2018) (J. Bataillon).  Thus, the protection of § 298 does not apply, and this motion in limine will be denied.

6. **Motion to Exclude, in Part, Testimony of Deborah A. Peacock, Esq., Doc. 365**

Defendants ask the Court to exclude the testimony of Deborah Peacock, expert for the plaintiffs, on willful infringement, arguing that Peacock intends to testify as both an expert and a lawyer and will summarize emails, documents and deposition testimony. This, argues defendants, required no assistance from an expert.  She does not intend to talk about the technical aspects of the case, but her "report focuses on the subjective state of mind of Defendants in order to demonstrate that the infringement was willful." Doc. 365-3, at 10-11, Ex. 1 ¶ 27.  Her opinions include:

a. Defendants intentionally copied ProTaper Next;

b. Defendants actually knew or should have known that their actions

constituted an unjustifiably high risk of infringement;

c. Defendants failed to make good-faith efforts to avoid infringing

the Patents-in-Suit prior to and after the filing of this lawsuit;

d. Defendants' launch, sale and marketing of the Accused Products

fell short of the standards of behavior for the industry and what are

typical standards of behavior in industry;

e. Defendants attempted to cover up their infringement; and

f. Any reliance by Defendants on the Legal Opinion of Michael J. Marcin is

misplaced and Defendants cannot reasonably believe they do not infringe

or that the Patent-in-Suit are invalid.

*Id.*, Ex. 1 ¶ 15.  Allowing her to testify as to these issues, contends defendants, does not in any way help the trier of fact.  *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, 2017

WL 2642277, at *14 (D. Or. June 19, 2017) (striking portion of patent-law expert's opinion that the infringement was willful as the objectionable portions "read[] largely like a legal memorandum" and would not be helpful to the trier of fact).

The Court previously ruled on the testimony of Ms. Peacock, finding that Ms. Peacock may testify as to "areas of patent processes, investigations, industry standards, due diligence, willfulness and related topics."  Doc. 351 at 12.  The Court also denied a motion for summary judgment, concluding that plaintiffs will be permitted to present their case concerning: "When did the defendants know or when should they have known [of the Patents-in-Suit]? Was defendant willfully blind to the patents-in-suit prior to the filing of the lawsuit? Did defendants continue to infringe during the pendency of the lawsuit?" Doc. 354 at 13.  The Court further determined that:

> [T]he Court will not permit [Ms. Peacock] to testify in such a way that invades the province of the jury. If the jury can understand the issue without the assistance of the expert, such testimony will not be permitted. Ms. Peacock may testify as to those issues within her qualifications that are designed to assist the jury and are reliable, but she may not testify as so as to decide issues for the jury.

Doc. 351 at 12-13.  Likewise, the Court now determines that Ms. Peacock will be permitted to testify in Court.  These issues have been discussed at least three times.  If, as the Court previously stated, Ms. Peacock strays from her expertise and begins testifying about issues that are the province of the jury, the defendants may so object.

### 7. <u>Motion in limine to Exclude Evidence and Argument that Edge is a Serial Copier of Dentsply's Products, Doc. 366</u>

Defendants move this Court to exclude evidence that they copied any of Dentsply's products other than the deontic file of the asserted patents.  Defendants also ask this Court to preclude any testimony that Edge is a serial copier.  Allegedly, expert Ms.

Peacock will argue that Edge has engaged in a "broader pattern of copying". Edge contends that Dentsply and Ms. Peacock "intend to argue at trial that Edge has willfully infringed the patents-in-suit based on a "broader pattern of copying" at least six additional Dentsply products (ProTaper, ProTaper Universal, ProTaper Gold, WaveOne Gold, Vortex Blue, and Endo Sequence) that are "not at issue in this lawsuit" because Dentsply does not allege that they practice the asserted patents." Doc. 366-1 at 7; *see also* Ex. 1 (Peacock Report) ¶¶ 34-35, 40, 85, 139 & n.7. *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017) (Bryson, C.J., sitting by designation) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001)) ("Sonos may present evidence that D&M copied Sonos's patents or patented features in commercial embodiments of the patents-in-suit, but may not present evidence that D&M copied material unrelated to the patented inventions.").

Likewise, defendants contend that the broader pattern of copying is not admissible to prove willful infringement. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *10 (E.D.N.Y. May 31, 2019) (excluding evidence of copying a product that "does not practice either of the patents-in-suit" offered to prove willfulness based on the "'significant prejudice associated with [copying] evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit'" (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–CV–3999, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015))); *Sonos*, 2017 WL 5633204, at *1-3 (excluding "evidence of copying that is unconnected to the commercial embodiments of the patent").

Plaintiffs first state that they do not intend to introduce evidence that defendants are serial copier. As stated by plaintiff "[t]o the extent Defendants' motion seeks only to

exclude argument and testimony characterizing Defendants' broader portfolio of products (i.e., products other than EdgeTaper Encore) as "copies" of Plaintiffs' products, Plaintiffs do not oppose." Doc. 384, at 24.  Plaintiff, however, does not want this motion to halt plaintiffs from adducing evidence related to the Accused Products, even if such a reference includes defendants' other products.  Further, argues plaintiffs, defendants rely on their broader portfolio of products to support their low damages figure.  To that extent, the plaintiffs likewise contend they should be able to adduce such evidence regarding rebutting defendants' claims.

This Court previously ruled that "the relevant evidence will come from the discovery related to the accused products, not non-accused products."[3]  Likewise, the Court finds there is no dispute regarding "serial copiers."   The plaintiff will be permitted to offer evidence that relates to the Accused Products, and the market for the endodontic files, which will likely include advertising, marketing and sales materials for defendants' products. Any other issues may be raised and addressed during the trial as they arise.

### 8. Motion in limine to Exclude Argument and Evidence Related to Defendants Index of Privileged Documents, Doc. 367

Defendants contend they have an index of privileged email communication between Edge's founder and his attorney, which is noted to be a "communication reflecting legal advice regarding patents."  *See* Doc. 367-3, Ex. 1.  Dentsply, it is argued,

---

[3] Dentsply moved to compel, arguing that "[e]vidence regarding a pattern of copying, including copying of products not accused of infringing the Patents-in-Suit," is relevant to both willful infringement and secondary considerations of nonobviousness.  Doc. 62 at 7-9.  June 7, 2018 Hearing Tr. at 97-100 ("Courts routinely limit a party's entitlement to discovery of unaccused products and services. . . And so I agree that the request for any endodontic instruments is too broad . . . . [I]f liability is established then the proof of willfulness will more likely turn on defendant's conduct with regard to the accused products, not with regard to some other products. . . . [W]hen I look at all those [secondary considerations of non-obviousness] it seems to me that . . . the relevant evidence will come from the discovery related to the accused products, not non-accused products . . . ."); *see also* Doc. 138 at 1.

wants to use this entry to show that that Edge had pre-suit knowledge of the patents-in-suit, which goes to the issue of willful infringement. "[N]o adverse inference shall arise from invocation of the attorney-client [] privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge, GMBH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en banc); *See Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, 2019 WL 1098925, at *2 (N.D. Ill. Mar. 8, 2019) (granting motion to exclude evidence derived from or regarding a privilege log). At best states defendant, the privilege log has minimal probative value.

Plaintiffs contend they should be able to use this privilege log to refresh recollection of and to cross-examine defendants' witnesses. Plaintiffs anticipate that defendants will argue they had no idea they would be accused of patent infringement, but the privilege logs and notations may directly contradict some of the testimony, particularly regarding capacity and resources to evaluate the risk. *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-279, 2012 WL 12294412, at *4 (D.N.M. July 25, 2012) ("The fact that a party had communications with its attorney is not privileged."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 199 F.R.D. 677, 683 (N.D. Okla. 2001) ("Generally, the fact that a client talked to an attorney, the date that the communications occurred, and the individuals present when the communications occurred are not privileged."). *See Knox Energy, LLC v. Gasco Drilling, Inc.*, 2016 WL 6537999, at *4 (W.D. Va. Nov. 3, 2016) (admitting a privilege log on the grounds that it demonstrated the fact that communications with counsel occurred during a relevant window, and noting that the fact of these communications were relevant because it rebutted the movant's argument that it was not aware of anything "unusual" at that time) (emphasis added); *see also Knox Energy, LLC v. Gasco Drilling, Inc.*, 637 F. App'x 735, 740 (4th Cir. 2016) (finding that the

court did not abuse its discretion in admitting the privilege log).  What defendants thought, immediately prior to the launch, argues plaintiffs, is relevant to their state of mind and rebuts their argument that they did not know the risk of patent infringement.

The Court is going to allow the use of the privilege log.  Plaintiff will not be permitted to ask for the specific content of or legal advice given.  However, the log seems relevant as to the issues specified by the plaintiff.  The Court, though, will be open to an objection by the defendants if the plaintiff crosses the line as set forth herein and comes to close to questioning the witness regarding the contents of the communications.  Those are privileged.

### 9.   Motion to Bifurcate Trial with Two Consecutive Phases: (1) Infringement and Invalidity, and (2) Damages and Willfulness, Doc. 368

Federal Rule of Civil Procedure 42(b) provides that a court may "order a separate trial of one or more separate issues" for "convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  Fed. R. Civ. P. 42(b) gives district courts "broad discretion" to bifurcate issues for trial.  *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985).  Bifurcation is appropriate when trial issues are "clearly separable." *New York Life Ins. Co. v. Saul*, 2017 WL 5634117, at *2 (D.N.M. Nov. 22, 2017) (quoting *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003)).  When claims for patent infringement are asserted, "district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case."  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319-20 (Fed. Cir. 2013) (en banc).  "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation."

In re Innotron Diagnostics, 800 F.2d 1077, 1079, 1084 (Fed. Cir. 1986) (citing 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2388 (1971)); *see also* New York Life Ins., 2017 WL 5634117, at *2.

The Court issued a Memorandum and Order granting partial summary judgment to plaintiffs that certain of the asserted claims in the three Scianamblo patents are infringed and/or not invalid and that other asserted claims of the Scianamblo patents and the fourth '696 patent are not invalid over some of the prior art.[4] Doc. 354, Summary Judgment order.   The jury will determine infringement and invalidity of the remaining asserted claims not decided by summary judgment.  Also, the jury will decide the amount of damages and the issue of willfulness.

Defendants contend that explaining the nuances of the Court's summary judgment rulings as well as having the jury determine the infringement/invalidity of the remaining asserted claims will confuse and prejudice the jury. Defendants state:

> the Court should hold trial in two, back-to-back phases before the same jury. In the first phase, the parties would present testimony from (i) all fact witnesses concerning all relevant issues, and (ii) the parties' technical expert witnesses (Dr. Sonntag and Mr. Garman) concerning infringement and invalidity. See supra Section II.B. After the jury renders its verdict on liability, the Court could inform the jury that it previously found infringement of additional patent claims at summary judgment. In the second phase, the parties would then present testimony from the parties' damages experts (Dr. Ugone and Dr. Sullivan) concerning complex economic and market data, and testimony from the parties' willfulness experts (Ms. Peacock and Mr. Marcin) concerning whether Edge knowingly and deliberately infringed.

---

[4] The Court granted Dentsply's motion on June 23, 2020, finding that "the Edge Taper Encore infringes (a) claims 1-4 and 6 of the '504 Patent, (b) claims 3, 8, and 17 of the '056 Patent, and (c) claims 4-6 and 20-21 of the '803 Patent." Doc. 354, SJ Order at 13-14, 16.  The Court granted Dentsply's motion, and entered summary judgment that "claims 6, 10, and 11 of the '504 Patent, claims 10, 11, and 17 of the '056 Patent, and claims 13, 14, and 20 of the '803 Patent are not invalid" over any of the identified prior art; that "claims 1-2, 5, and 8-10 of the '696 Patent are not invalid over Scianamblo '669"; and that "the asserted claims of the '504 Patent are not invalid over McSpadden '186, Rouiller, or Badoz '279."  *Id.* at 23-24.

Doc. 368-1 at 10.  Accordingly, the defendants ask the Court to bifurcate trial into the two phases.

Plaintiffs oppose bifurcation of trial.  First, plaintiffs argue that the defendants waived bifurcation in the joint proposed pretrial order.[5]  Second, plaintiffs argue that bifurcation would require the parties to present the same evidence twice, once for the benefit of liability and then for the benefit of willfulness.  Third, the damages calculation is no more complex than the average patent case.  Fourth, there is not prejudice in allowing the jury to hear the case in its entirety, and having the jury hear the entire case will not result in jury confusion.  "A single trial generally lessens the delays, costs and inconvenience for the court, the parties, and the witnesses." *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 626 (N.D. Ill. 2000) (citation omitted).  "While patent cases frequently present complicated liability and damages questions, bifurcation in patent cases remains the exception rather than the rule." *Lam Research Corp. v. Schunk Semiconductor,* 65 F. Supp. 3d 863, 865 (N.D. Cal. 2014); *SenoRx, Inc. v. Hologic, Inc.,* 920 F. Supp. 2d 565, 568 (D. Del. 2013); *see also* Fed. R. Civ. P. 42 Advisory Committee Notes ("separation of issues for trial is not to be routinely ordered").

Plaintiffs have won on the claims already decided by this Court.  The jury will be required to address willfulness and damages.   There is no judicial economy in bifurcating this trial. The Court likewise agrees that the damages calculations will not be unusually difficult for a patent case. Further, the Court is of the opinion that any confusion to the jury

---

[5] "Dentsply Sirona shall present first at trial regarding issues of infringement, willful infringement, and damages. Edge shall then present its response to Dentsply Sirona's case regarding infringement, willful infringement, and damages, and will also present first regarding the issue of patent invalidity. Dentsply Sirona shall then present its response to Edge's case regarding patent invalidity." Doc. 385-2, Ex. 11 at 24 (Joint Proposed Pretrial Order).

can be remedied with the use of limiting instructions, special verdict forms or other instructions.

10. **Motion for leave to file a reply to defendants' opposition and response to plaintiff's motion in limine, Doc. 392**

Plaintiffs ask the Court to permit it to file a reply to defendants' response in Doc. 382, specifically motions in limine number 2 and 9.  Defendants oppose this motion. With regard to motion in limine number 2, plaintiff argues that defendant is now going to have counsel testify as to certain privileged information regarding willful infringement. Defendant disagrees arguing it is entitled to elicit certain testimony regarding its post-filing conduct.  The Court will permit the filing of the reply brief instanter.  The Court will determine the merits of these arguments as they arise during the course of the trial.   It is difficult at this point, without the context of the evidence, to make a determination what plaintiffs will be able to ask defendants' counsel.  Again, however, as stated herein, if defendants open the door, the Court will likely permit the plaintiffs to ask additional questions of defendants' counsel.

With regard to motion in limine number 9, plaintiffs contend that defendants should not be permitted to introduce evidence that Revo-S is a prior art product that renders certain asserted claims of the '696 patent invalid as obvious.  Defendants argue that this is an inaccurate view of the evidence, and they will be able to prove that Revo-S is a prior art product.  Again, the Court is unable to rule on this question prior to trial.  The Court will listen as the evidence is presented and will make a ruling at that time upon an appropriate objection.

The motion to file the reply brief is granted instanter.

11.    **Motion in limine 1-11, Doc. 369**

A.    *Motion No. 1: To Preclude Defendants From Offering Testimony Contrary to this Court's Claim Construction Order*

Plaintiffs contend that defendants will elicit testimony from their expert, Mr. Garman, that will be contrary to this Court's Claim Construction Order. Defendants contend that none of their proffered testimony in this regard will run contrary the Claim Construction Order. Defendants also state that Edge does not seek to argue that the '696 patent requires the active part to extend through the point of the file, unless it needs to do so for rebuttal. The Court will not permit the parties to contradict the court's construction. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury."). Therefore, the Court grants this motion in limine.

B.    *Motion No. 2: To Preclude Defendants from Relying on the Advice of Their Litigation Counsel as a Defense to Willful Infringement*

Plaintiffs argue that defendants represented that they "do not intend to rely on the substance of advice provided by litigation counsel as a defense to Plaintiffs' claims of willful infringement." (March 9, 2020 e-mail from Julie Simeone.) Doc. 327-21, Ex. U. As a result, plaintiff did not conduct discovery relating to communications and their litigation counsel. Accordingly, plaintiffs contend that defendants should be precluded from relying on such documents as prepared by their litigation counsel, such as their preliminary non-infringements or preliminary invalidity disclosures as to plaintiffs' claim of willfulness.[6]

---

[6] Defendants are relying on an opinion of counsel from Michael Marcin, a patent attorney who is not representing Defendants in this litigation. Defendants have also designated Mr. Marcin as a testifying expert.

These documents were prepared for litigation, and not on the merits, and thus argues plaintiffs, they are not documents relevant to non-infringement or invalidity.

Defendants argue that what they actually said was that they did "not intend to rely on the substance of advice provided by litigation counsel as a defense to Plaintiffs' claims of willful infringement, which we maintain should be focused on prelitigation conduct." Doc. 369-4, Ex. 3, at 2.  This, states defendants, is because the willfulness determination is measured "against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) ("'[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct' because 'a patentee must have a good faith basis for alleging willful infringement.'" (citation omitted)).

As the discussed herein above, the Court will, after listening to the context of the evidence offered, make a decision at trial.  However, to the extent Mr. Marian's testimony primarily relies on litigation counsel's work product as the basis for his opinion the Court will not be inclined to allow such testimony. The Court will deny the motion at this point in the case, but it is subject to objection and further discussion as trial.

C.   *Motion No. 3: To Preclude Dr. Goodis, or Any Other Fact Witness, From Providing Expert Testimony On the Issues of Infringement, Validity, and the Availability of Acceptable Non-Infringing Alternatives*

Dr. Goodis is defendants' fact expert, and plaintiffs contend he is not an infringement or validity expert and should not be permitted to testify in that regard. Further, Dr. Goodis has agreed he has no opinions on or independence knowledge of these issues.  Doc. 369-5, Ex. 4 (May 21, 2019 Dep. Tr. of Charles Goodis) at 109:8-10, 18-25 and 110:1-3, *Id.* at 111: 13-16, 24-25 and 112:1-6 (emphasis added); *see also id.*

at 110:4-10, 244:21-25, and 245:1-5.  Plaintiffs argue that he must be qualified as an expert through submission of a Fed. R. Civ. P. 26(a)(2) report before he is able to render an opinion.  *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688-90 (Fed. Cir. 2020).

Defendants ask the court to deny this motion, arguing it does not intend to elicit expert testimony from any fact witness or witness who has not submitted an expert report.  However, Edge intends to ask witnesses questions regarding factual testimony that bear on the ultimate issues of infringement, invalidity, willful infringement and damages.  Defendants state that "Edge intends to call at trial its CEO and experienced endodontist, Dr. Charles Goodis, who may offer factual testimony on topics including: (i) his knowledge of and experience with the endodontic instruments and related products at issue including the prior art instruments sold under the names EndoSequence and Revo-S; (ii) his awareness and understanding of Edge's invalidity and non-infringement defenses in this action, which is relevant to his state of mind in connection with Dentsply's willful infringement claims; (iii) availability and cost of alternatives upon which Edge's technical and damages experts have opined and are expected to offer expert testimony at trial; and (iv) issues related to alleged secondary considerations of nonobviousness."  Doc. 382 at 9-10.

The Court notes that some of this testimony may be used to lay foundation for experts and to establish personal knowledge.  *See, e.g., Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2017 WL 5634993, at *5-6 (C.D. Cal. Oct. 6, 2017).  From that perspective, the Court will allow these fact witnesses to testify.  However, to the extent that they cross over into expert testimony, and the witness has not been identified under

Rule 26, plaintiffs are free to so object at trial.  This motion is granted in part and denied in part.

D.      _Motion No. 4: To Preclude Defendants From Referring to Prior Legal Disputes That Did Not Relate to ProTaper Next, EdgeTaper Encore, or Any of the Patents-in-Suit_

Plaintiffs contend that defendants will raise issues regarding prior legal disputes involving both plaintiffs and defendants and their related companies that do not in any way relate to ProTaper Next, Edge Taper Encore, or any of the Patents-in-Suit. Defendants attempted to raise this issue during claim construction, and the Court stated that prior lawsuits on different patents or products are irrelevant.[7]  Defendants state they do not intend to offer any litigation history unless it is used to rebut.  The Court has already determined this is not admissible evidence.  If, however, defendants feel that plaintiffs open the door, the Court will at that time here arguments of counsel.  Otherwise, this motion is granted.

E.      _Motion No. 5: To Preclude Defendants From Prejudicing the Jury By MakingNon-Patent Related Allegations Against Plaintiffs That Are Unrelated to ProTaper Next, EdgeTaper Encore, or Any of the Patents-in-Suit_

Plaintiff contends that defendants will offer untrue evidence of unsavory conduct

---

[7] MR. GINSBERG: And just to be clear, Dentsply has a history of suing smaller competitors. This is the third lawsuit that they filed against my --
THE COURT: I just finished a case with Apple. Okay? So just don't talk to me about this.
MR. GINSBERG: Fair enough.
THE COURT: Yes, indeed. And I start one next month with Samsung. So just this is the way business is done in the United States, thank you very much.
MR. GINSBERG: Understood, Your Honor.
THE COURT: Okay.
MR. GINSBERG: I'll defer from talking about the outcomes of those two prior cases.
THE COURT: Thank you.
Doc. 206 (Claim Construction Hr. Tr.) at 28:19-29:7. In addition, Magistrate Yarbrough stated in this case: [THE COURT:]" And frankly I'm not the judge that would be making the decision on it but if it was my decision I wouldn't be inclined to allow into evidence what happened or didn't happen in some other case that deals with an entirely different product. So I wouldn't think that would come into evidence anyway." Doc. 369-7, Ex. 6 (June 7, 2018 Hr. Tr.) at 103:5-12.

on the part of the plaintiffs that does not relate to any claims or defenses in this case, including international sanctions on Iran, false advertising claims in another case, antitrust violations and so forth.

Defendants state they will not offer evidence regarding Iran. However, they do not know what plaintiffs are talking about regarding false advertising and anticompetitive behavior, nor do they know what plaintiffs are referring to when they say "several documents" on the exhibit list. To the extent that defendants believe plaintiffs are disparaging them regarding advertising practices and so forth, defendants wish to offer such evidence.

The Court finds that in general references to other lawsuits, other claims, and other behaviors in totally unrelated lawsuits are irrelevant and will not be admitted at trial. To this extent plaintiffs' motion is granted. If based on the evidence as it evolves defendants feel that something in this regard is relevant, it may motion the Court at that time.

F.     *Motion No. 6: To Preclude Defendants From Relying on Untimely Produced Video Exhibit DTX No. 547*

Plaintiffs argue that defendants disclosed an untimely a video exhibit well past the required deadline. A week after the close of expert discovery, and after the expert Mr. Garman's deposition, defendants disclosed a video. Doc. 369-8, Ex. 7 (March 25, 2020 Letter from A. Bapna to R. Echols). Further, this video was not in Mr. Garman's report, so plaintiffs contend he would not be permitted to testify as to Video Ex. DTX No. 547.

Defendants disagree and argue that if the evidence is disclosed late and it is "justified" or "harmless", preclusion is unnecessary. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The Court considers the following four factors in its analysis: "(1) the prejudice or surprise to the party against

whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* Defendants contend there is no new evidence in this video, so there can be no surprise or prejudice. Defendants state that the position in the video is consistent with their position in invalidity disclosures served on November 22, 2019, and Mr. Garman's expert report of January 11, 2020. Defendants argue that "the only difference between DTX-547 and the videos produced on January 11, 2020 is that the former is a video of an actual EndoSequence file rotating and exhibiting swagger and the latter is a model of the file created by CT scanning, which also shows the same rotation and swagger." Doc. 382 at 16.

The Court finds the production of the video was clearly late. The defendants waited until after both production and depositions were completed before disclosing this video. Plaintiff contends it has had no opportunity to examine this expert on the contents. The Court will allow the defendants to produce this expert, and defendants will pay all costs and expenses of the plaintiffs and the expert and allow plaintiffs to examine Mr. Garman as to this video. If defendants choose not to do so, the video will not be permitted to be introduced in this case. This motion is granted as instructed herein.

Defendants contend that Dentsply intends to offer evidence and argument regarding other than the patents-in-suit which are the "marked patents." Defendants argue that Dentsply will offer evidence that these marks should have alerted Edge to the existence of the patents-in-suit. Defendant states that this Court, and others, have held that pre-suit knowledge is required to establish willful infringement. The evidence, contends defendants, will show they never knew of the patents-in-suit pre-litigation. *Halo*

*Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *SRI Intl., Inc.*, 930 F.3d at 1308; *see also VLSI Tech. LLC v. Intel Corp.*, 2020 WL 3488584, at *4 n.4 (D. Del. June 26, 2020).

The Court finds it necessary to hear the evidence and to view the objections in the context of that evidence.  The Court will deny the motion subject to reassertion at trial.

> G. _Motion No. 7: To Preclude Defendants From Referring to Plaintiffs' Marking of Products and Patents Not at Issue in This Lawsuit_

Plaintiffs contend that defendants intend to offer evidence on labeling for patents and products not at issue in this case.  In particular, plaintiffs state defendants have identified exhibits and deposition testimony not related to the products in this lawsuit but appear to be offered to imply that plaintiffs failed to comply with the false marking statute for labeling.  Plaintiffs argue these documents and testimony are irrelevant.

Defendants contend that Edge should be permitted to present evidence of patent marking practices regarding the ProTaper Next files to show the flaws in the arguments of Dentsply.  Dentsply, contends defendants, cannot show that Edge knew of the patents-in-suit prior to the litigations.  Thus, there is not the pre-suit knowledge that is a prerequisite to establishing willful infringement.

There is no fraudulent marking issue in this lawsuit, the Court finds such evidence is not relevant.  The Court generally will refuse to allow testimony of products not at issue in the lawsuit.  Accordingly, the Court will grant the motion.

> H. _Motion No. 8: To Preclude Mr. Garman From Offering Testimony That Is Beyond the Scope of His Expert Reports Or Is Based On Information that Was Not Known to Mr. Garman at the Time of His Deposition_

Plaintiffs ask the Court to exclude certain of Mr. Garman's opinions that rely on

inaccurate and unreliable CAD models.  *See* Doc. 291.  This Court previously addressed this issue in a Daubert motion stating that "[D]efendants must lay sufficient foundation as to Garman's qualifications and as to his methodologies … [and] show that such methods are reliable."  Doc. 351 at 17.  Plaintiffs ask this Court to preclude information that is beyond the scope and information he relies on now that was obtained after he submitted his expert report and after he was deposed.

Edge contends it will offer sufficient foundation at trial. Edge argues that the motion is too vague and difficult to respond to and that Mr. Garman's testimony will support the reliability of the models.

"All expert witnesses at trial must tether their testimony to the contents of their respective reports and are precluded from exceeding the scope of their reports." *AngioScore, Inc. v. TriReme Medical, Inc.*, 2015 WL 5258786, at *1 n.1 (N.D. Cal. Sept. 8, 2015); *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 994 (Fed. Cir. 2007) (upholding district court decision to exclude expert testimony regarding issues addressed in deposition but not in the expert's report); *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713 (Fed. Cir. 2005) ("[W]e do not think the district court abused its discretion in excluding Dr. Catz's testimony under Fed. R. Civ. P. 37(c)(1) insofar as his testimony exceeded the material disclosed in his expert report.").

The Court is not going to determine this issue until trial.  The Court has indicated that if defendants do not lay sufficient foundation in this regard, the evidence will not be permitted at trial.   The Court will deny the motion at this time, but it is subject to objection and renewal at trial.

I.   *Motion No. 9: To Preclude Defendants From Referring to Samples of Revo-S That Were Manufactured After the Filing Date of the '696 Patent (Are Therefore Not Prior Art) and Are Admittedly Different Than Files Sold Prior to the Filing Date of the '696 Patent*

Plaintiffs contend that defendants are going to argue that the '696 Patent is invalid based at least in part on samples that were not manufactured until years after the '696 Patent was filed. This cannot be prior art, argues plaintiffs, because they do not reflect the geometry of the Revo-S that were sold prior to the filing of the '696 patent.  The Patent was filed in 2013, and the tests were made on samples manufactured in 2017 and 2019. Mr. Garman admits that he did not include the deposition testimony of Mr. Claude regarding these changes to Revo-S, as he thought he had been told that the changes did not affect the functional part of the Revo-S files.  *See* Doc. 369-13, Ex. 12 at 150:20-152:5.

Defendants oppose this motion and asks the Court to deny it in its entirety. Defendants contend this goes to the merits of one of defendants' primary prior art invalidity defenses to Dentsply's claim of infringement of the '696 patent.  This is more akin to a request for summary judgment, argues defendants.  *See, e.g., Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) ("A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed.").   Further, defendants argue, plaintiffs mischaracterize the evidence, as there is no evidence by plaintiffs that show any changes have been made to Revo-S since 2011.

The Court will deny the motion at this time.   The Court will rule on it as the evidence is presented at trial.  There are clearly issues of fact that are disputed at this time.  The Court can easier rule on this motion in the context of the evidence at trial.

J.      *Motion No. 10: To Preclude Defendants From Offering Testimony That Their Endodontic Files Are Allegedly Superior to Plaintiffs' Files Due to Their Metallurgy*

Plaintiffs argue that defendants are going to attempt to argue at trial that their endodontic files are superior to plaintiff's files.  Plaintiffs note that this Court, during the claim construction hearing, found the metallurgy of defendant's files to be irrelevant.  Doc. 206 (Claim Construction Hr. Tr.) at 29:13-30:9 (emphasis added).  Plaintiffs are arguing about the geometries of the files, not their metallurgy.

Defendants argue that the metallurgy of the parties' files is relevant, particularly the secondary considerations of non-obviousness and damages.  *See Fox Factory, Inc. v. SRAM, LLC,* 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("In order to accord substantial weight to secondary considerations in an obviousness analysis, 'the evidence of secondary consideration must have a "nexus" to the claims.'" (citation ommitted); *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

Again, the Court will hear this evidence as it is presented at trial.  At this point the Court is uncertain as to the relevancy of metallurgy of defendants' products.  However, the Court will grant some leeway and will hear evidence in this regard, if defendants create the required nexus to the claims.

K.      *Motion No. 11: To Preclude Defendants From Arguing that the Asserted Claims of the '504 Patent Are Invalid Over McSpadden '186, Rouiller, or Badoz '279 Since the Court has Already Held that the Asserted Claims of the '504 Patent are Not Invalid Over these References*

Plaintiffs argue that the Court granted summary judgment that the asserted claims of the '504 Patent (claims 1-4, 6, 8-11, and 14) are not invalid over McSpadden '186,

Rouiller, or Badoz '279.  Doc. 354 at 23-24.  Since the Court has ruled on this issue, the plaintiffs ask the Court to minimize the risk to the jury and keep the defendants from arguing this issue.  Edge does not oppose this motion.  The Court will, therefore, grant plaintiffs' motion.

**THEREFORE, IT IS ORDERED THAT THE:**

1. Motion in limine to exclude evidence and argument that defendants "blocked" manufacturer from producing documents, Doc. 360, is denied in part and granted in part;

2. Motion in limine to Exclude Evidence and Argument Concerning Chinese Culture and Business Practices, Doc. 361, is denied;

3. Motion in limine to Exclude Improper Evidence and Argument Concerning Direct Infringement, Doc. 362, is denied;

4. Motion in limine to Exclude Evidence and Argument Concerning the PTAB's Decisions to Exercise Discretion and Decline to Institute Inter Partes Review of the Patents-in-Suit, Doc. 363, is denied;

5. Motion in limine to Preclude Argument that there is an Obligation to Obtain an Opinion of Counsel, Doc. 364, is denied;

6. Motion to Exclude, in Part, Testimony of Deborah A. Peacock, Esq., Doc. 365, is denied;

7. Motion in limine to Exclude Evidence and Argument that Edge is a Serial Copier of Dentsply's Products, Doc. 366, is denied;

8. Motion in limine to Exclude Argument and Evidence Related to Defendants Index of Privileged Documents, Doc. 367, is denied;

9. Motion to Bifurcate Trial with Two Consecutive Phases: (1) Infringement and Invalidity, and (2) Damages and Willfulness, Doc. 368, is denied;

10. Motion for leave to file a reply to defendants' opposition and response to plaintiff's motion in limine, Doc. 392, is granted instanter; and

11. Plaintiffs' Motions in limine numbers 1 through 11, Doc. 369, are:

    a. Motion No. 1: To Preclude Defendants From Offering Testimony Contrary to this Court's Claim Construction Order, is granted;

    b. Motion No. 2: To Preclude Defendants from Relying on the Advice of Their Litigation Counsel as a Defense to Willful Infringement, is denied;

    c. Motion No. 3: To Preclude Dr. Goodis, or Any Other Fact Witness, From Providing Expert Testimony On the Issues of Infringement, Validity, and the Availability of Acceptable Non-Infringing Alternatives, is granted in part and denied in part;

    d. Motion No. 4: To Preclude Defendants From Referring to Prior Legal Disputes That Did Not Relate to ProTaper Next, EdgeTaper Encore, or Any of the Patents-in-Suit, is granted;

    e. Motion No. 5: To Preclude Defendants From Prejudicing the Jury By Making Non-Patent Related Allegations Against Plaintiffs That Are Unrelated to ProTaper Next, EdgeTaper Encore, or Any of the Patents-in-Suit, is granted;

    f. Motion No. 6: To Preclude Defendants From Relying on Untimely Produced Video Exhibit DTX No. 547. Is denied;

g. Motion No. 7: To Preclude Defendants From Referring to Plaintiffs' Marking of Products and Patents Not at Issue in This Lawsuit, is granted;

h. Motion No. 8: To Preclude Mr. Garman From Offering Testimony That Is Beyond the Scope of His Expert Reports Or Is Based On Information that Was Not Known to Mr. Garman at the Time of His Deposition, is denied at this time and subject to reassertion at trial;

i. Motion No. 9: To Preclude Defendants From Referring to Samples of Revo-S That Were Manufactured After the Filing Date of the '696 Patent (Are Therefore Not Prior Art) and Are Admittedly Different Than Files Sold Prior to the Filing Date of the '696 Patent, is denied;

j. Motion No. 10: To Preclude Defendants From Offering Testimony That Their Endodontic Files Are Allegedly Superior to Plaintiffs' Files Due to Their Metallurgy, is denied; and

k. Motion No. 11: To Preclude Defendants From Arguing that the Asserted Claims of the '504 Patent Are Invalid Over McSpadden '186, Rouiller, or Badoz '279 Since the Court has Already Held that the Asserted Claims of the '504 Patent are Not Invalid Over these References, is granted.

Dated this 2nd day of November, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge