IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DENTSPLY SIRONA INC., TULSA DENTAL PRODUCTS LLC D/B/A DENTSPLY SIRONA ENDODONTICS,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGE ENDO, LLC, US ENDODONTICS, LLC,<br><br>Defendants. | 1:17CV1041-JFB-SCY<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the motion to dismiss for lack of Article III standing, Doc. 410, filed by the defendants pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

**BACKGROUND**

The two Plaintiffs, Dentsply Sirona Inc. (DSI) and Tulsa Dental Products LLC D/B/A Dentsply Sirona Endodontics (DSE), assert claims for infringement of four patents-in-suit against defendants: U.S. Patent Nos. 8,882,504, 8,932,056, and 9,351,803 (collectively, the "Scianamblo patents") and U.S. Patent No. 9,801,696 (the "Rota Patent"). Both Plaintiffs seek to recover damages for infringement of all four patents.

In February 2016, DII was renamed Den

Dentsply Sirona Inc., following a merger between one of its wholly owned subsidiaries with Sirona Dental Systems, Inc., Tulsa Dental Products LLC d/b/a Dentsply Sirona Endodontics, the other Plaintiff in this lawsuit. DSI allegedly controls all entities. DSE is, according to plaintiffs, a wholly owned subsidiary of DSI and is therefore an

1

"Affiliate" of DSI under the Scianamblo License. Defendants did not and have not obtained a license to practice the Scianamblo patents.

Similarly, On November 14, 2017, Maillefer Instruments Holding Sarl (hereinafter Maillefer), who owns the Rota patent, granted DSE "an exclusive right and license under the [Rota Patent] to make, have made, use, offer to sell, sell and import Licensed Products in the [United States]." Doc. 410-4 Maillefer License) § 2.1. Both Maillefer and DSE, contend plaintiffs, are wholly owned subsidiaries of DSI. McCarthy Decl. Doc. 418-1, ¶ 3. DSI states it has the authority to assert the Rota Patent against infringers, and such authority includes joining DSE to the litigation. Defendants do not have nor have ever had a license to use the Rota Patent from Maillefer, DSE or any other entity.

As stated in this Court's previous Memorandum and Order on Claim Construction,

> This case involves patents relating to the specific design of a particular type of endodontic instrument, called an endodontic file, which is used by a dentist or endodontist to prepare a root canal. Dentsply Sirona uses this particular file design in its commercial product marketed under the brand name ProTaper NEXT®. Defendant Edge Endo LLC ("Edge Endo") is a supplier of dental instruments. It competes directly with Dentsply Sirona in the U.S. The first three patents (the '504, '056 and '803 patents) are in the same family and share a common specification. Those three patents all claim inventions by Dr. Michael Scianamblo and are referred to collectively herein as the "Asserted Scianamblo Patents." The fourth patent, the '696 patent, claims an invention by Dr. Gilbert Rota and Dr. Paul-Henri Vallotton (both employees of a Dentsply Sirona subsidiary called Maillefer) and is also referred to as the "Rota Patent." The design of ProTaper NEXT includes, inter alia, a unique off-centered cross section along at least a portion of the file.

Doc. 237 at 2.

**LAW**

A complaint can be challenged under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.

1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.*

"As a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A plaintiff's Article III standing to sue is "a constitutional requirement" and "a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As such, it is "not subject to waiver," and can be raised at any time in the case. *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1318-19 (Fed. Cir. 2010) (quoting *Pandrol USA, LP v. Airboss Ry. Prods.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003)), abrogated on other grounds, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). Standing to sue "is a question of law, which [the Federal Circuit] reviews de novo." *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1273-74 (Fed. Cir. 2011). Each plaintiff bears the burden of proving it has Article III standing. *Id.*; see also *Lujan*, 504 U.S. at 561.

To have Article III standing, "(1) the plaintiff must have suffered an injury in fact[;] (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely . . . that the injury will be redressed by a favorable decision." *MHL*

3

*TEK*, 655 F.3d at 1273-74 (quoting *Lujan*, 504 U.S. at 560-61) (quotations omitted). "The touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). The Federal Circuit has stated with regard to constitutional standing in a patent infringement case that:

> First, a patentee, i.e., one with "all rights or all substantial rights" in a patent, can sue in its own name. Second, a licensee with "exclusionary rights" can sue along with the patentee. And, finally, a licensee who lacks exclusionary rights has no authority to assert a patent (even along with the patentee).

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019). "[I]f an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated." *WiAV Sols.*, 631 F.3d at 1266-67. "Standing cannot be cured by joining a patentee as a party." *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007); *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.").

**ARGUMENTS**

A. *Arguments of defendants*

Defendants argue that neither plaintiffs Dentsply Sirona nor Tulsa Dental have Article III standing in this case, contending that neither hold "exclusionary rights" in a

patent that were violated by the defendant's infringement.  *WiAV Sols.LLC*, 631 F.3d at 1257.  Plaintiffs, argue defendants, rely on the following:

> A November 30, 2011 License Agreement between Dr. Michael J. Scianamblo and Dentsply International Inc. (a predecessor to DSI), see Ginsberg Decl., Ex. 1 (JTX-012, the "Scianamblo License"); and A November 14, 2017 Patent License Agreement between Maillefer Instruments Holding Sarl ("Maillefer") and DSE, see Ginsberg Decl., Ex. 2 (JTX-016, the "Maillefer License").

Doc. 410-1 at 2.  Defendants contend that the Scianamblo License grants coextensive rights to DSI, DSE and a number of other entities.  The Scianamblo License purports to grant "exclusive and all substantial worldwide rights to the Licensed Patents" not just to DSI's predecessor, but also to all "Affiliates" of DSI's predecessor, including (but not limited to) DSE: "3.1 License Grant. Licensor hereby grants to Licensee (which shall include its Affiliates) the exclusive and all substantial worldwide rights to the Licensed Patents to make, have made, further develop, research, use, sell, import, export and otherwise distribute Licensed Devices."  Doc. 410-2 and 3, Ginsberg Decl., Ex. 1 (Scianamblo License), Recitals, §§ 1, 2.4, 3.1.

Further, the licensees were granted "the right to sublicense any of the rights and licenses granted herein," provided that Dr. Scianamblo receives "50% of any royalties received . . . under any such sublicenses".[1]  Thus, assert defendants, DSI and DSE

---

[1] For purposes of this Agreement any reference to DENTSPLY or Licensee shall include all Affiliates (as defined below) of DENTSPLY. . . .

> 15.2 Sublicense. Licensee shall have the right to sublicense any of the rights and licenses granted herein within the License grant. Any sublicense granted by Licensee shall be subject to the terms and conditions of this Agreement and shall contain an express provision to that effect. No sublicense shall relieve Licensee of any of Licensee's obligations under this Agreement and Licensee shall be required to pay Licensor 50% of any royalties received by Licensee under any such sublicenses.

Doc. 410-3, Recitals, §§ 1, 3.1, 15.2

5

cannot have "exclusive" rights under the Scianamblo patents. Further, argue defendants, DSI does not have any rights under the Rota patent as the Maillefer License grants rights only to DSE. In addition, the Maillefer License grants to [DSE] the right to grant sublicenses of any of its rights under the Licensed Patents to an affiliate of DSE. Doc. 410-2 § 15.2. Accordingly, defendants ask this Court to (1) dismiss DSI's and DSE's claims for infringement of the Scianamblo patents, and (2) dismiss DSI's claim for infringement of the '696 Rota patent.

Plaintiffs, argue defendants, cannot sue in their own names as they are not assignees of legal title to the patent in suits and do not hold all substantial rights to the patents/lawsuit. See *Enzo APA & Son*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Lone Star Silicon Innovations*, 925 F.3d at 1228. According to defendants, DSI and DSE are not assignees as Dr. Scianamblo who "owns the Patents" and retains the rights to prosecute and maintain the patents, participate in and recover from infringement suits, approve any assignments of DSI's rights, receive royalties, approve settlements. See *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1357-58, 1361-63 (Fed. Cir. 2010) (finding no assignment of "all substantial rights" because licensor AMF retained the right to sue if licensee AB decided not to, which "is thoroughly inconsistent with an assignment").

Next, defendants contend that they have failed to join Dr. Scianamblo and Maillefer, so they do not have prudential[2] standing to sue as exclusive licensees.

---

[2] "Whether a plaintiff has standing to bring suit is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Examination of the standing issue "involves two levels of inquiry." *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). The first is "of a constitutional dimension" and involves determining whether the plaintiff has suffered an injury in fact that is likely to be redressed by a favorable decision. *Id.* (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). The second is "prudential" and concerns whether "the plaintiff is the proper proponent of the rights on which the

Recently, the Federal Circuit stated that ("an exclusive license is a license to practice the patented invention 'accompanied by the patent owner's promise that others shall be excluded from practicing it'".). *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1361 (Fed. Cir. 2020) (quoting *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998)); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc) ("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well.").

Defendants concede that the Scianamblo License does grant DSI and DSE a license to practice the Scianamblo patents, but they argue that it fails to promise that additional licenses will not be granted to others. Defendants contend that that the Scianamblo License expressly gives more than 100 additional licenses to non-party "affiliates" of DSI or DSE. *See* Doc. 2, Ginsberg Decl., Ex. 1, Recitals, §§ 2.4, 3.1, and 15.2. These affiliates are permitted to practice the patented invention and more importantly to sublicense any third party, including Edge, argues the defendants.

---

action is based." *Id.* (citing *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)) (emphasis added).

Relevant to the second inquiry, the Supreme Court has held that generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of [other] parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citing *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) (per curiam)). There is a "limited ... exception" to this general rule when the third party can show: (1) that the third party has "a 'close' relationship with the person who possesses the right," and (2) that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (citation omitted).

*EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 960 F.3d 785, 813 (6th Cir.), reh'g en banc dismissed, 831 Fed. Appx. 748 (6th Cir. 2020), cert. granted in part sub nom. *Cameron v. EMW Women's Surgical Ctr.*, 20-601, 2021 WL 1163735 (U.S. Mar. 29, 2021).

7

*ChromaDex, Inc. v. Elysium Health, Inc.*, No. CV 18-1434-CFC-JLH, 2020 WL 7360212, at *2 n.1 (D. Del. Dec. 17, 2020) (explaining that the "right to exclude that accompanies the issuance of a patent" is "legally distinct" from the right to bring a "cause of action" for infringement); see *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340-42 (Fed. Cir. 2007); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) ("a 'right to sue' clause cannot confer standing," which "depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue"); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1033-34 (Fed. Cir. 1995) ("the right to sue clause has no effect" on Ortho's standing); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007) ("Propat's rights to license the patent and sue for its infringement" are not "sufficient to give it standing"); *Uniloc USA, Inc. v. Motorola Mobility, LLC*, No. CV 17-1658-CFC, 2020 WL 7771219, at *7-8 (D. Del. Dec. 30, 2020) (since "[non-party] Fortress had the legal right to sublicense," the plaintiffs "lacked the requisite exclusionary rights to have standing"). *Lone Star Silicon Innovations*, 925 F.3d at 1227-28, 1230-34 (a licensor's retained right to restrict a licensee's ability to transfer rights in the asserted patents is "fundamentally inconsistent with a transfer of all substantial rights").

    B.  <u>Arguments of plaintiffs</u>

Plaintiffs disagree with all arguments made by the defendants. First, plaintiffs argue that the license agreements expressly assign to Plaintiffs the exclusive right to assert the patents-in-suit. Plaintiffs point out that these agreements were produced to the defendants in discovery in April and July of 2018. Defendants filed no motions regarding jurisdiction at that time. The Court has already conducted claim construction, received

8

four petitions for inter partes review with the Patent Trial and Appeal Board, ruled on expert issues, granted summary judgment, and has determined that the defendants infringed valid claims for three of the patents in suit.

The Scianamblo License assigns to the plaintiffs the power to exclude others from practicing the patents by bringing a lawsuit alleging infringement. This section states: "Licensee shall have the primary right to assert the Patent and Licensee shall have the right to file suit in its own name and account and in the name of Licensor." Doc. 410-3, Scianamblo License §§ 12.1(a).

This, argues plaintiffs, is an exclusionary right. *WiAV Sols.*, 631 F.3d at 1266 (a plaintiff has Article III standing if "it holds any of the exclusionary rights that accompany a patent"). Further, plaintiffs argue that the Scianamblo License expressly defines "Affiliated" as only actions of those entities who plaintiffs direct and control ("the exclusive and all substantial worldwide rights to the Licensed Patents to make, have made, further develop, research, use, sell import, export and otherwise distribute Licensed Devices." Doc. 410-3 (Scianamblo License) § 3.1. "Affiliate" means "with respect to any person or entity, any other person or entity which, directly or indirectly, controls or is controlled by, or is under common control with such person or entity." *Id.* at § 2.4. "Control" means: "[T]he possession, direct or indirect, of such person or entity, or the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise. *Id.* Plaintiffs state that they are the head of the corporate structure and they retain all decision-making authority for itself and all subsidiaries regarding enforcement, assignment, and licensing. Doc. 418, McCarthy Decl. ¶ 7 (Vice President, Deputy General Counsel & Assistant Secretary at

9

DSI. That is proven, they argue, by the fact that defendants were unable to get a license in this case and had to withdraw their product from the market.

As to the Rota Patent, there is no allegation that Tulsa Dental lacks standing. DSI, however, argues it owns and controls both the owner Maillefer Instruments Holding and its exclusive licensee DSE. This is enough plaintiffs argue to find Article III standing. *See, e.g., Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160, n.10 (D. Kan. 2009) ("A parent corporation which exclusively uses the patent of a wholly owned subsidiary and has the right to enforce that patent may have constitutional standing as an exclusive licensee, even without a written license agreement.").

Plaintiffs next argue that they have "prudential standing" to sue without joining the patentee. In some cases where the licensee "hold[s] exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent," the "exclusionary rights must be enforced through or in the name of the owner of the patent." *Morrow*, 499 F.3d at 1340. In such cases, "the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Id.* "[W]hether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235–36; *see also id.* at 1236 ("[A]lthough [Plaintiff] does not possess all substantial rights in the asserted patents, its allegations still satisfy Article III."). Failure to join the patentee, can be cured by joining the entity. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203, n.3 (Fed. Cir. 2005) ("If the original plaintiff had Article III standing, any prudential standing concerns may be overcome by adding a plaintiff with proper standing."); *Intellectual Prop. Dev. V. TCI Cablevision*, 248 F.3d at 1348 (Fed. Cir. 2001) ("[T]his court has recognized

the principle that a patent owner may be joined by an exclusive licensee" without dismissing the case for lack of jurisdiction). In fact, the Federal Circuit has a "practice of endorsing joinder of patent owners…in order to avoid dismissal for lack of standing." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1385 (Fed. Cir. 2015). Prudential standing is not jurisdictional and may be waived or forfeited. *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) ("prudential standing is not a jurisdictional limitation and may be waived.").

### C. Court analysis

The Court agrees that Plaintiffs have the right to sue under the Scianamblo patents because Dr. Scianamblo, the patent holder, expressly assigned that right to Plaintiffs. The Court also finds that plaintiffs have standing to bring this lawsuit. *See WiAV*, 631 F.3d at 1267 ("This court therefore holds that an exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject not only to rights in existence at the time of the license but also to future licenses that may be granted only to parties other than the accused."); *SonoSim, Inc. v. Medaphor Ltd.*, No. 16-2847, 2016 WL 7479363, at *2 (C.D. Cal. Oct. 17, 2016) ("An exclusive licensee is not necessarily the sole licensee of the patented technology….Rather, the patentee can grant many exclusive licenses, each consisting of different substantive rights."). The Federal Circuit has stated that:

> [T]he key question in determining whether [a plaintiff] has standing to assert the [patents] against the Defendants is not, as the Defendants would have it, whether [the plaintiff] has established that it has the right to exclude all others from practicing the patent. The question is whether [the plaintiff] has shown that it has the right under the patents to exclude the Defendants from engaging in the alleged infringing activity and therefore is injured by the Defendants' conduct.

*WiAV*, 631 F.3d at 1267. Further, there has been no showing that any of the subsidiaries can extend a license to the defendants. The Court agrees that it takes DSI's permission, and the language of the Scianamblo License is very clear. The *WiAV* case is dispositive of these issues. The defendants can only get a license from the plaintiffs, and plaintiffs hold the exclusionary rights to allow practicing the Scianamblo Patents. *WiAV*, 631 F.3d at 1266–67. Accordingly, plaintiffs have Article III standing.

The Court notes that defendants have not moved to dismiss based on prudential standing to bring suit without joining Dr. Scianamblo. In any event this Court would deny the motion, as prudential standing can be waived, defendants failed to raise this argument in the last three plus years, although defendants had the relevant documents since 2018. Thus, waiver applies. *See, e.g., Niemi*, 770 F.3d at 1345 ("Although the jurisprudence surrounding standing and jurisdiction has at times been muddled, we have clearly held that 'prudential standing is not a jurisdictional limitation and may be waived.'"). Second, plaintiffs, under the license, has the "primary right to assert" the Scianamblo Patents. Doc. 410-3, Scianamblo Patent § 12.1(a). Dr. Scianamblo does not hold an independent right to assert the Scianamblo Patents against defendants, as he could have done so only if Plaintiffs had declined to sue Defendants. Finally, the Scianamblo License would allow plaintiffs to add Dr. Scianamblo's name at the beginning of the case had the defendants raised the issue at that time. Doc. 410-3, Scianamblo License § 12.1(a).

With regard to the Rota Patent, DSE has standing to sue for infringement of that patent which is uncontested by the defendants. DSE has Article III standing for the reasons set forth herein. Under the Maillefer License, Maillefer grants to DSE "an exclusive right and license under the [Rota Patent] to make, have made, use, offer to sell,

sell and import Licensed Products in the [United States]." Doc. 410-4 (Maillefer License) § 2.1. DSE also has "the express and exclusive right to take appropriate action" with regard to potential infringers and "may, in its sole judgement and at its own expense, institute suit against any such infringer … and control, settle and defend such suit in any manner." *Id.* at § 3.2. With respect to DSI, other courts have held that "[a] parent corporation which exclusively uses the patent of a wholly owned subsidiary and has the right to enforce that patent may have constitutional standing as an exclusive licensee, even without a written license agreement." *Bushnell,* 659 F. Supp. 2d at 1160, n.10. DSE and Maillefer are both wholly-owned subsidiaries of DSI. Doc. 418-1, McCarthy Decl. ¶ 3. The Maillefer License was executed on November 14, 2017, and two days later both DSI and DSE assert the Rota Patent against the defendants in this lawsuit. *See, e.g., Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 718 (W.D. Mich. 2004) (holding that the parent company had sufficient rights in the patent to confer standing, where the owner of the patent was a wholly-owned subsidiary of the parent and the subsidiary exclusively permitted the parent to practice and assert the patent); *Atmel Corp. v. Authentec, Inc.*, 490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007) ("It is clear from the evidence presented that Atmel Corporation has always had the implicit right to make, use and sell the patented invention and to control the enforcement of the patent rights. Therefore, Atmel Corporation has always acted as the exclusive licensee of the [patent]."); *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 122 (D. Del. 2016) (finding that the plaintiff parent company had standing where the subsidiary owned the patents-in-suit and the plaintiff owned and exercised control over the subsidiary).

THEREFORE, IT IS ORDERED THAT defendants' motion to dismiss, Doc. 410, is denied.

Dated this 6th day of May 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge